IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-802-FL

| | | |
|---|---|---|
| RODOLFO DIAZ MARQUEZ, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-16, DE-18] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Rodolfo Diaz Marquez ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings, and upholding the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on April 1, 2011, alleging disability beginning December 29, 2009. (R. 21, 189-95). His claim was denied initially and upon reconsideration. (R. 21, 68-87). A hearing before the Administrative Law Judge ("ALJ") was held on June 14, 2012, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 35-55). A Spanish language interpreter

was present during the hearing to assist Claimant in his testimony. (R. 36). On July 9, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 21-29). On October 16, 2012, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred by improperly evaluating Claimant's past relevant work. Pl.'s Mem. [DE-17] at 8-12.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 23). Next, the ALJ determined Claimant had the following severe impairment: fractures of lower extremities. *Id.* However, at step three, the ALJ concluded this impairment was not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23-24). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with frequent operation of foot controls bilaterally, occasional climbing of ramps or stairs, and occasional climbing of ladders, ropes, and scaffolds. (R. 24). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 24-29). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of his past relevant work. (R. 29).

### B. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 64 years old and unemployed. (R. 30). Claimant is originally from Puerto Rico and is a U.S. Citizen. *Id.* Claimant completed secondary school, the equivalent of high school, but cannot speak English. *Id.* Claimant was last employed with a construction company performing construction at Fort Bragg, where his duties included driving a two-ton crane, lifting and carrying construction supplies and tools, and moving employees around within the construction site. (R. 41).

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. § 404.1567(c).

4

Claimant's past work experience also includes work in Puerto Rico at a farmer's market for approximately four years, serving clients and managing merchandise. (R. 41-42). Prior to that, Claimant worked at a church in Puerto Rico for approximately 10 years, performing a variety of janitorial and cooking tasks. (R. 42-43). Claimant was injured while working on a construction project in 2009, when a backhoe ran over Claimant's feet and another piece of equipment hit Claimant's leg. (R. 43-44). As a result of this incident, Claimant made a worker's compensation claim, which has been resolved. (R. 44).

Claimant explained how the pain and difficulty with his feet support his disability claim and his inability to work full-time. Claimant testified he has a rod and three screws in his feet and experiences pain daily in his feet and ankles. (R. 44, 47-48). Claimant also experiences an increased sharp pain in his feet approximately three times per day and sometimes his feet swell. (R. 46-47). When Claimant experiences sharp pains, he takes Tylenol and will lie down on his bed with his feet elevated and covered by a blanket because they often swell. (R. 47). Claimant also stated that his hips hurt and that he cannot stand and walk for long periods of time. (R. 44). Claimant estimates that he can stand for approximately thirty minutes before needing to sit, sit for approximately 30 minutes to one hour, and walk for approximately twenty minutes before needing to rest. (R. 46). Claimant does not use a cane. (R. 48). Additionally, Claimant estimates he can lift and carry approximately 15 pounds. (R. 46). Claimant testified he can "put up with" pain at a level nine. (R. 47). Claimant is not generally able to complete the chores he starts because of pain. (R. 45). Claimant sometimes leaves the house with his wife and he will walk around with her until his feet start hurting and he has to sit down. (R. 47). Claimant generally takes Tylenol two to three times per day for the pain, but does not take prescription

5

pain medication because Tylenol has sufficiently helped to manage the pain and he does not like to take a lot of drugs. (R. 48). Claimant was last at the doctor in November 2011 and he has not returned because the Tylenol was effective and he has no money and no health insurance. (R. 45, 49).

## C. Vocational Expert's Testimony at the Administrative Hearing

Susan Grant testified as a VE at the administrative hearing. (R. 49-55). After the VE's testimony regarding Claimant's past work experience (R. 50-51), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed a couple hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work and asked the VE to assume the following individual:

> Please assume a hypothetical individual of the claimant's age, education and work background who's able to perform at the medium exertional level. The individual can lift and/or carry 25 pounds frequently and 50 pounds occasionally. The individual can stand and/or walk for about six hours in an eight hour work day and can sit for up to six hours in an eight hour work day. The individual can frequently operate foot controls bilaterally. The individual can occasionally climb ramps and stairs and occasionally climb ladders, ropes or scaffolds.

(R. 51-52). The VE testified that the hypothetical individual could perform the past positions of sexton (DOT # 389.667-010) and cafeteria manager (DOT # 187.167-106). (R. 52). The ALJ next instructed the VE to assume the same limitations in the first hypothetical, but with the exertional ability to complete light work, and asked whether the individual could perform the positions of sexton and cafeteria manager. *Id.* The VE responded that the individual could only perform the position of cafeteria manager. (R. 52-53).

6

Claimant's counsel next questioned the VE. Claimant's counsel first asked the VE to specify whether her testimony concerning Claimant's work at the church described three separate jobs or one job. (R. 53). The VE responded that her testimony considered separate jobs. *Id.* Claimant's counsel next instructed the VE to assume the first hypothetical given by the ALJ specifying medium work, but to consider the additional limitations of standing or walking for two hours, with no repetitive kneeling or squatting, and asked whether the individual could perform any past relevant work. (R. 53-54). The VE responded in the negative. (R. 54). Claimant's counsel also asked what exertional level is most consistent with the limitation of standing or walking two hours in an eight hour work day to which the VE responded that sedentary work was the most consistent. *Id.* The ALJ concluded questioning of the VE by asking why the individual in the first hypothetical could not perform the position of cook–one of the three positions described by the VE in characterizing Claimant's past relevant work at the church. *Id.* The VE responded that the individual could perform the cook position (DOT # 313.374-010) in addition to the positions of sexton and cafeteria manager already identified. Id.

## V. ANALYSIS

Claimant contends the ALJ erred in determining Claimant can perform his past relevant work, specifically arguing Claimant's past relevant work is a "composite job," i.e. including functions of two or more jobs, and the ALJ fully analyzed only portions of this work and failed to fully develop the record regarding physical and mental demands thereof. Pl.'s Mem. at 8-12.

Upon assessing a claimant's RFC, the ALJ compares the RFC with the physical and mental demands of the claimant's past relevant work and then determines whether the claimant's impairments prevent him or her from performing such work. 20 C.F.R. § 404.1520(e), (f). "The

7

claimant is the primary source for vocational documentation." SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982). In determining a claimant's ability to do past relevant work, the ALJ must consider the following:

> 1. the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements;
>
> 2. medical evidence establishing how the impairment[s] limit[ ] [his or her] ability to meet the physical demands and mental requirements of such work; and
>
> 3. in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles ["DOT"], etc., on the requirements of the work as generally performed in the economy.

*Id.* "[A] claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past *or* as it is generally required by employers in the national economy." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. Sept. 25, 1995) (citing SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982)).

The ALJ determined Claimant was capable of performing his past relevant work as a cafeteria manager, DOT # 187.167-106, light exertion, SVP-7; cook, DOT # 313.374-101, medium exertion, SVP-5; and sexton, DOT # 387.667-010, medium exertion, SVP-2. (R. 29). The ALJ found that "all of these jobs were part of the claimant's duties as a church worker–a job performed greater than ten years" and that "this work did not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* Prior to making the step four determination, the ALJ determined that Claimant had the RFC to perform work at the medium exertion level, with the further limitations of frequently operate foot controls bilaterally, occasionally climb ramps or stairs, and occasionally climb ladders, ropes, or scaffolds. (R. 24-29). At the administrative hearing, Claimant testified as to his prior work at a

8

church, where his duties including preparing a menu and cooking for one- to two-hundred people, working in the cafeteria, and cleaning the church. (R. 42). The VE classified Claimant's work at the church into three separate jobs: cafeteria manager, cook, and sexton, and indicated that a hypothetical individual limited to the medium exertion level, as well as the additional limitations listed above, could perform each of these jobs. (R. 51-54). The VE confirmed the testimony was consistent with the DOT. (R. 55).

The ALJ conducted a thorough review of the medical and opinion evidence in arriving at Claimant's RFC (R. 24-29), and Claimant does not dispute the ALJ's RFC determination. Rather, Claimant contends the ALJ failed to discuss the mental and physical requirements of Claimant's prior work, parsing out only portions of Claimant's prior job. Pl.'s Mem. at 8-9. However, Claimant fails to assert any specific duties required by his prior work at the church that were not captured in the three jobs the VE identified to the ALJ. Furthermore, none of the jobs listed by the VE exceed Claimant's RFC as defined by the ALJ, distinguishing this case from that of *Parsons v. Apfel* on which Claimant relies. 101 F. Supp. 2d 357, 362-63 (D. Md. June 6, 2000) (finding error where ALJ failed to identify claimant's past job duties or cite to specific DOT jobs supporting the decision). *See also Miles v. Astrue*, No. 8:07-3164-RBH, 2009 WL 890651, at *13 (D.S.C. Mar. 30, 2009) (finding no error in analysis of "composite job" where the ALJ "did not cull the responsibilities of the prior work simply to find a skill that the plaintiff could perform and which could be characterized as past work" and did not disregard portions of plaintiff's past relevant work). *Cf. Timmons v. Colvin*, No. 3:12-CV-609, 2013 WL 4775131, at *6 (W.D.N.C. Sept. 5, 2013) (finding error in ALJ's analysis of "composite job" where the ALJ failed to utilize sources such as the DOT or a VE in making a determination that

9

claimant could perform past relevant work). Nor does Claimant dispute the VE's characterization of his past relevant work utilizing the DOT, and Claimant's counsel did not challenge the VE's testimony on this point at the administrative hearing. *See Buchanan v. Astrue*, No. 4:10-CV-167-FL, 2011 WL 5439087, at *10 (E.D.N.C. Aug. 15, 2011), *adopted by* 2011 WL 5439377 (E.D.N.C. Nov. 9, 2011) (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) (explaining in determining past relevant work, the ALJ is entitled to rely on the testimony of a VE who "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy")).

The Commissioner does point out that Claimant's Work History Report indicates Claimant's work at the church required him to lift 100 pounds or more and climb "all the time" (R. 217), which exceeds Claimant's RFC. However, as the Commissioner correctly asserts, "a claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past *or* as it is generally required by employers in the national economy." *Pass*, 65 F.3d at 1207 (citing SSR 82-61, 1982 WL 31387, at *2). *See also Womble v. Astrue*, No. 5:10-CV-00010, 2011 WL 902420, at *5 (W.D. Va. Mar. 15, 2011), *adopted by* 2011 WL 1219233 (W.D. Va. Mar. 31, 2011) ("Although the plaintiff's prior job as a cashier/stocker may well have involved exertional demands significantly in excess of those generally required by employers in the national economy for work as a cashier, she must still demonstrate that she is also unable to perform the functional demands and job duties of the position as generally required by employers nationwide.") (citing *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 774 (11th Cir. 2010)). Thus, because Claimant could perform the

10

positions equivalent to his past relevant work "as generally required by employers in the national economy," the fact that Claimant's work at the church "as performed" exceeded Claimant's RFC is not dispositive.

Additionally, while SSR 82-61 provides that "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT," it further directs that "[s]uch situations will be evaluated according to the particular facts of each individual case." 1982 WL 31389, at *2. Here, the ALJ appropriately relied on the VE to evaluate Claimant's past relevant work, and the VE confirmed her testimony was consistent with the DOT. (R. 55). The ALJ considered the mental and physical requirements of each position, as classified by the VE, and found them to be consistent with Claimant's RFC. (R. 29). *See* SSR 82-62, 1982 WL 31386, at *4 (requiring the ALJ to make three findings at step four: (1) a determination of the individual's RFC; (2) a determination of the physical and mental demands of the individual's prior work; and (3) a finding that the individual's RFC is sufficient to meet those demands); *Johnston v. Astrue*, No. 4:07-CV-00070-FL, 2008 WL 2397541, at *5 (E.D.N.C. June 12, 2008) (finding the ALJ satisfied the requirements of SSR 82-62 where the ALJ properly arrived at plaintiff's RFC and the ALJ specifically found that plaintiff possessed the RFC to perform the specific past job, as confirmed by the vocational expert at testimony). Accordingly, the ALJ's analysis in this respect was sufficient.

Claimant also contends that the ALJ failed to fully develop the record and "simply states that the claimant could perform work as it is generally performed in the national economy and cited to the [DOT] in support." Pl.'s Mem. at 17. Claimant bears the burden to produce evidence regarding the demands of his past relevant work. *See Burns v. Astrue*, No. 5:11-CV-

11

737-D, 2012 WL 6645002, at *2 (E.D.N.C. Dec. 20, 2012) (citations omitted). Here, the record contains ample evidence to support the ALJ's decision, including the Claimant's testimony at the administrative hearing, Claimant's work history report, and the testimony of a VE. Moreover, Claimant has failed to indicate what favorable evidence further development of the record would elicit and how it would change the ALJ's determination that Claimant could perform his past relevant work. *See, e.g., Camp v. Massanari*, 22 F. App'x 311 (4th Cir. 2001) (explaining any error in failing to seek additional information is harmless absent a showing of prejudice). Accordingly, Claimant's contention that the ALJ failed to fully develop the record with respect to his past relevant work lacks merit.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-16] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-18] be GRANTED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the 3rd day of March 2014.

Robert B. Jones, Jr.
United States Magistrate Judge